## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

Spottswood W. Robinson III and Robert R. Mehrige Jr.
Federal Courthouse, 701 East Broad Street
Richmond. Virginia 23219

**ENTREPRANEUR DREAM TEAM,**
**A Georgia Corporation,**

Plaintiff,

v.

Civil Action No. 3-22 _cv-529_

**CERTAIN INTERESTED UNDERWRITERS**
**OF LLOYD'S INSURANCE COMPANY,**
Please Serve Any Officer:
42 West 54th Street
New York, New York 10019-5405,

Defendants

## COMPLAINT

Entrepraneur Dream Team, A Georgia Corporation ("Entrepraneur"), by counsel,

sets forth to the Court the following:

### I. Jurisdiction

1.      This Court has jurisdiction as to this case under the provisions of 28 U.S.C. § 1331 and

28 U.S. C. Section 1332 because plaintiff Entrepraneur and defendant Lloyd's Insurance

are citizens of different states and the amount in controversy exceeds $75,000.  Plaintiff

Entrepraneur is a Georgia corporation with its principal place of business in the

Commonwealth of Virginia and Lloyd's insurance is a corporation with its principal

place of business in the state of New York.  Thus, there is diversity of citizenship

between Entrepraneur and Lloyd's Insurance. The amount in controversy is greater than $75,000.

## II. Venue

2. Venue is proper in this Court because service of process on Lloyd's Insurance will have to be through the Secretary of the Commonwealth of Virginia, located in the City of Richmond, Virginia.

## III. Parties

3. Entrepraneur is a for-profit corporation doing business in the Commonwealth of Virginia.

4. Certain Underwriters of Lloyd's Insurance Company ("Lloyd's Insurance") is insurer as to a fire to a residence that is the subject of this case. Lloyd's Insurance operates for profit in the Commonwealth of Virginia.

## IV. Facts

### Facts Applicable to All Counts

5. During the period from November 8, 2017 until August 14, 2018, Entrepraneur was the owner of a residence ("the residence") located at 3012 Ballantine Boulevard, Norfolk, Virginia 23509.

6. Entrepraneur's ownership of the residence was subject to the lien of a deed of trust ("the deed of trust") that secured a note, that evidenced a mortgage loan, as to which the note holder, at all times relevant to this case, was Anchor Assets V, LLC ("Anchor").

7. Entrepraneur entered into an insurance policy ("the insurance policy") with Lloyd's Insurance, whereby Lloyd's Insurance insured the residence for casualty, including fire, with the insurable period being from November 8, 2017 until November 8, 2018.

8. The insured party as to the insurance policy was Entrepraneur, which was listed as the insured party on the insurance policy.

9.     As consideration as to the insurance policy, Lloyd's Insurance received the full insurance premium called for in the insurance policy, so that the insurance policy was fully in effect on July 28, 2018.

10.     Cardinal Associates, Inc. ("Cardinal Associates") was an insurance agency that acted as agent for Lloyd's Insurance as to the insurance policy. Cardinal Associates, Inc. acted through its president, Christopher Caldwell ("Caldwell").

**Count One:   Breach of Contract:  Seeking $180,000 in Compensatory Damages**

11.     On July 28, 2018, there was a fire ("the July 28, 2018 fire") at the residence that caused substantial damage to the residence, severely reducing the value of the residence.

12.     On August 1, 2018, Entrepraneur made a claim to Lloyd's Insurance seeking payment as a result of the July 28, 2018 fire.

13.     On August 14, 2018, there was a foreclosure of the residence, at which the high bid was for less than the value of the residence at its then condition of having been damaged by the fire and at much less than the value of the residence before the fire.

14.     Entrepraneur had been aware in July 2018 that the residence was in the initial stages of a foreclosure process but did not know of the August 14, 2018 date for foreclosure until after the August 14, 2018 foreclosure.

15.     Prior to the August 14, 2018 foreclosure, Entrepraneur paid or had paid on its behalf $19,497.19 towards initial partial repairs of the damage caused to the residence by the July 28, 2018 fire. Repairs were not completed by Entrepreneur because of the August 14, 2018 foreclosure on the residence which resulted in loss of ownership of the residence by Entrepreneur.

16.     As a result of the fire, Entrepraneur sustained the following damages:

    A.     Entrepreneur's aforesaid payment of $19,497.19.

      B.     Major loss in the value of the residence, which approximated $177,000.

17.    On August 1, 2018, Entrepreneur made a claim for payment under the insurance policy because of the July 28, 2018 fire.

18.    Under the terms of the insurance policy, Lloyd's insurance was contractually bound to pay the damages recited in paragraph 18 of this complaint, up to the policy limit of $180,000.

19.    Lloyd's insurance has not made any payment on the aforesaid claim.

20.    As a proximate result of the facts set forth herein above in this Count of this complaint, Entrepraneur sustained, in addition to the damages recited in paragraph 16 of this complaint, the loss of interest on such damages.

21.    As a result of the facts recited herein above in this Count of this complaint, Entrepraneur is entitled to entry of a judgment in its favor against Lloyd's insurance for contractual compensatory damages, including the policy limit of $180,000 plus interest.

**Count Two:   Breach of Implied Covenant of Good Faith and Fair Dealing**

22.    Entrepreneur re-avers the facts set forth in Count One of this complaint except for the averment as to remedy.

23.    As insurer as to the insurance policy, Lloyd's Insurance had a common law duty under Virginia law to act with good faith and fair dealing towards Entrepreneur to avoid depriving Entrepreneur of the essentials of Entrepraneur's rights under the insurance policy.

24.    Acting as agent for Lloyd's Insurance, Caldwell Associates, through Caldwell, represented to Entrepreneur that Lloyd's Insurance had paid $177,000 in insurance proceeds to Anchor.

25. Such representation was false. Lloyd's Insurance made no payment to Anchor, rather took the position it had no reason to pay Anchor as a result of the fire because of the foreclosure. As a result of the foreclosure, the amount due to Anchor pursuant to the mortgage loan was paid in full to Anchor.

26. Entrepraneur did not learn that the representation recited in paragraph 24 of this complaint was incorrect until late 2021.

27. In acting through its agent Cardinal Associates (which acted through Caldwell) Lloyd's Insurance was responsible for the representation to Entrepraneur recited in paragraph 24 of this complaint.

28. Such representation constituted breach of the aforesaid implied covenant of good faith and fair dealing recited in paragraph 25 of this complaint.

29. As a proximate result of the said breach of the implied covenant of good faith and fair dealing, Entrepreneur lost the interest on the $177,000 it did not pursue under the insurance policy because of a belief that Lloyd's Insurance had paid to Anchor.

30. As a proximate result of the said breach of good faith and fair dealing by Lloyd's Insurance recited herein above, for an indeterminate time in the future, Entrepreneur will continue to loss interest on the said $177,000.

31. As a result of the facts recited herein above in this Count of this complaint, Entrepraneur is entitled to a judgment in its favor for compensatory damages.

**Count Three: Bad Faith By Lloyd's Insurance as to the Insurance Policy; Seeking Compensatory Damages, Punitive Damages, and Attorney's Fees**

32. Entrepreneur re-avers the facts set forth in Count One and Count Two of this complaint, except for the averments as to remedy.

33.   Anchor sought payment from Lloyd's Insurance because of the loss of value of its
collateral as to the mortgage loan by reason of the severe damage caused by the fire.

34.   Although Lloyd's Insurance knew that Entrepraneur had made a claim for payment on
the insurance policy, Lloyd's Insurance largely ignored that claim. Lloyd's Insurance
wrote counsel for Anchor taking the position that Lloyd's Insurance had no reason to
make any payment to Anchor because Anchor had been paid by reason of the foreclosure.
However, Lloyd's Insurance did not inform Entrepraneur of such position, rather, acting
through its agent Cardinal Associates, which acted through its president Caldwell,
Lloyd's Insurance represented to Entrepraneur that Lloyd's Insurance had made a
$177,000 payment to Anchor.

35.   After Entrepraneur discovered that the representation recited in paragraphs 24 and 34 of
this complaint was incorrect, Entrepraneur communicated to Lloyd's Insurance that
Entrepreneur was entitled to payment by Lloyd's Insurance by reason of the fire loss
under the terms of the insurance policy.

36.   As part of its response to what is recited in paragraph 35 of this complaint, Lloyd's
Insurance entered into communications with Entrepraneur in which Lloyd's repeatedly
asked on what basis Entrepraneur claimed any right to payment under the insurance
policy in view that Lloyd's Insurance had taken the position it had no obligation to pay
Anchor because of the foreclosure.  When Entrepraneur responded that Lloyd's Insurance
had an obligation to make payment to Entrepraneur because Entrepraneur owned the
residence at the time of the fire, which occurred before the foreclosure, Lloyd's Insurance
repeatedly indicated that such was not a full response to the question posed by Lloyd's

Insurance asking why Entrepraneur was entitled to any payment under the insurance policy in view of the foreclosure.

37.    During communications between Entrepraneur and Lloyd's Insurance, the former referenced that an insurance agent had communicated a claim on the insurance policy. Lloyd's insurance asked the identity of such agent (thereby indicating doubt that a claim had been made on behalf of Entrepraneur) although, as later acknowledged by Lloyd's Insurance in a letter dated July 26, 2022, Lloyd's Insurance knew a claim had been made on behalf of Entrepraneur on August 1, 2018.

38.    After Entrepraneur discovered that the representation by Lloyd's Insurance, through agency, that Lloyd's Insurance had made a payment of $177,000 to Anchor (as recited in paragraph 24  and paragraph 34 of this complaint) was incorrect, and after Entrepraneur sought insurance payment by Lloyd's Insurance under the insurance policy as a result of the July 28, 2018 fire, Lloyd's Insurance engaged in a response of run-around, particularly in repeatedly calling for an explanation as to why Entrepraneur disagreed with the position taken by Lloyd's Insurance to Anchor refusing payment because of the foreclosure.   Despite response by Entrepranuer that such position by Lloyd's Insurance was incorrect because the March 28, 2018 fire occurred before the foreclosure while the residence belonged to Entrepraneur, Lloyd's Insurance persisted in claiming such response was not a full answer to why Lloyd's Insurance could be mistaken in claiming it did not owe insurance payment because of the foreclosure.

39.    On July 26, 2022, Lloyd's Insurance for the first time indicated suspicion of Entrepraneur as to the cause of the July 28, 2018 fire.

40.   Lloyd's Insurance made the indication recited in paragraph 39 of this complaint with no basis for casting any suspicion on Entrepraneur as to the cause of the July 28, 2018 fire.

41.   The facts set forth herein above in this Count of this complaint constituted bad faith by Lloyd's Insurance in response to the August 1, 2018 claim by Entrepraneur to Lloyd's Insurance for payment pursuant to the insurance policy by reason of the July 28, 2018 fire.

42.   As a proximate result of such bad faith by Lloyd's Insurance, Entrepraneur sustained the following damages:

   A.   Entrepraneur has not been paid by Lloyd's Insurance the full policy limit of $180,000 to which Entrepraneur is entitled under the insurance policy as a result of the July 28, 2018 fire.

   B.   Entrepraneur has lost the interest on the said $180,000.

43.   As a proximate result of the bad faith recited herein above in this Count of this complaint, for an indeterminate time in the future, Entrepraneur will lose interest on the aforesaid $180,000.

44.   The bad faith by Lloyd's Insurance recited herein above has been intentional, deliberate, willful, wrongful, oppressive, and so indifferent to the rights of Entrepraneur as to be legally malicious (although not based on actual animosity).

45.   As a result of the facts set forth in this Count of this complaint, Entrepraneur is entitled to entry of a judgment against Lloyd's Insurance for compensatory damages.

46.   As a result of what is set forth herein above in this Count of this complaint, there are grounds for this Court to enter a judgment in favor of Entrepraneur against Lloyd's Insurance for punitive damages.

47.    As a result of what is set forth herein above in this Count of this complaint, there are grounds for this Court to enter a judgment in favor of Entrepraneur against Lloyd's Insurance for the reasonable attorney's fees of Entrepraneur's legal counsel in preparing, filing, and maintaining this complaint.

### Call for Trial By Jury

48.    Entrepraneur calls for trial by jury.

### Conclusion

Wherefore, Entrepreneur prays that the Court enter a judgment in favor of Entrepraneur against Lloyd's Insurance for compensatory damages, punitive damages, and attorney's fees.

Respectfully,

**ENTREPRANEUR DREAM TEAM,**
**A Georgia Corporation,**

By_____
        Counsel

Henry W. McLaughlin (VSB No. 07105)
Law Office of Henry McLaughlin, P.C.
Eighth and Main Building
707 East Main Street, Suite 1050
Richmond, Virginia 23219
(804) 205-9020; fax (877) 575-0245
henry@mclaughlinvalaw.com
*Counsel for Entrepraneur Dream Team*