IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| ENTREPRANEUR DREAM TEAM, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:22CV529 (RCY) |
| | ) | |
| CERTAIN INTERESTED | ) | |
| UNDERWRITERS OF LLOYD'S | ) | |
| INSURANCE COMPANY, | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION**

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint, Plaintiff's Motion Seeking Leave to File Second Amended Complaint, the Magistrate Judge's Report and Recommendation ("R&R"), and the Defendant's Objection to the same. The matters have been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J).

For the reasons stated herein the Court will overrule the Defendant's Objection, adopt the R&R, grant Defendant's Motion to Dismiss Plaintiff's Amended Complaint, and conditionally grant the Motion Seeking Leave to File Second Amended Complaint.

**I. PROCEDURAL HISTORY**

On July 28, 2022, Plaintiff Entrepraneur [sic] Dream Team ("Plaintiff" or "Entrepraneur") filed its Complaint against Defendant Certain Interested Underwriters of Lloyd's Insurance Company ("Defendant" or "Lloyd's Insurance"), alleging Breach of Contract (Count One), Breach of Implied Covenant of Good Faith and Fair Dealing (Count Two), and Bad Faith (Count Three). (ECF No. 1.) On October 26, 2022, Defendant filed a Motion to Dismiss for Failure to State a

Claim (ECF No. 4). Then, on November 9, 2022, Plaintiff filed an Amended Complaint as a matter of course under Federal Rule of Civil Procedure 15(a)(1) (ECF No. 7). The Amended Complaint restated the three aforementioned counts, but also added claims of Actual Fraud (Count Four), and Constructive Fraud (Count Five). (*Id.* at 9–11.)[1]

On November 23, 2022, Defendant filed the pending Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 9). On December 14, 2022, Plaintiff filed an Unopposed Motion Seeking an Extension to File Memorandum in Opposition to the Motion to Dismiss (ECF No. 11), which the Court granted and allowed Plaintiff until December 21, 2022, to respond to Defendant's Motion to Dismiss. (ECF No. 12.) On December 21, 2022, Plaintiff filed the also-pending Motion Seeking Leave to File Second Amended Complaint ("Motion for Leave," ECF No. 13), to which it attached the Proposed Second Amended Complaint (ECF No. 13-1).

On May 10, 2023, the case was reassigned to the undersigned. On May 15, 2023, the Court referred both the pending Motion to Dismiss and the Motion for Leave to Magistrate Judge Summer L. Speight for a Report and Recommendation. (*See* Referral Order, ECF No. 21.) On July 7, 2023, Magistrate Judge Speight returned her R&R (ECF No. 31). On July 20, 2023, Defendant filed its Objections to the R&R (ECF No. 32). Plaintiff filed its Response to the Objection on August 8, 2023 (ECF No. 37), and Defendant filed its Reply on August 15, 2023 (ECF No. 40).

## II. STATEMENT OF FACTS[2]

From November 8, 2017, until August 14, 2018, Entrepraneur owned a residence located 3012 Ballantine Boulevard, Norfolk, Virginia 23509 (the "Residence"). (Am. Compl. ¶ 5.)

---

[1] The Court employs the pagination assigned to the parties' submissions by the CM/ECF docketing system.

[2] The Court accepts as true and recites the well-pleaded factual allegations set forth in the Amended Complaint, as is required at the Motion to Dismiss stage. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

Entrepraneur's ownership of the Residence "was subject to the lien of a deed of trust . . . that secured a note that evidenced a mortgage loan," which was held by Anchor Assets V, LLC ("Anchor"). (*Id.* ¶ 6.) Entrepraneur also purchased an insurance policy with Lloyd's ("Insurance Policy," ECF No. 9-3.), in which Lloyd's insured the Residence for "casualty, including fire," from November 8, 2017, to November 8, 2018. (Am. Compl. ¶ 7.) The insurance policy provided that no lawsuit could be brought against Lloyd's unless "the action is started within two years after the date of loss." (Insurance Policy 45.)[3] On July 28, 2018, there was a fire at the Residence ("July 28, 2018 fire") that severely damaged the Residence and reduced its value. (Am. Compl. ¶ 11.) On August 1, 2018, Entrepraneur made a claim to Lloyd's seeking payment as a result of the fire. (*Id.* ¶ 12.) The Insurance Policy had a $180,000 coverage limit. (*Id.* ¶ 18.)

On August 14, 2018, the Residence entered foreclosure. (*Id.* ¶ 13.) In July 2018, Entrepraneur was aware that the Residence was in the initial stages of a foreclosure, but did not know the date of the foreclosure until after the foreclosure occurred. (*Id.* ¶ 14.) Prior to the foreclosure, Entrepraneur spent $19,497.19 towards partial repairs of the Residence due to the July 28, 2018 fire, but the repairs were not completed because the foreclosure resulted in Entrapraneur's loss of ownership over the Residence. (*Id.* ¶ 15.) Entrapraneur also lost $177,000 due to the Residence's value depreciating as a result of the July 28, 2018 fire. (*Id.* ¶ 16.) Lloyd's has yet to make a payment on the aforementioned insurance claim. (*Id.* ¶ 19.)

Cardinal Associates, Inc. ("Cardinal Associates") "was an insurance agency that acted as agent for Lloyd's Insurance as to the insurance policy." (*Id.* ¶ 10.) Cardinal Associates acted through its president, Christopher Caldwell ("Caldwell"). (*Id.*) "Acting as agent for Lloyd's Insurance, Cardinal Associates, through Caldwell, represented to Entrepraneur that Lloyd's

---

[3] Even though the Insurance Policy was attached to the Motion to Dismiss rather than the Complaint, the Court considers the Insurance Policy because it is "integral to the complaint and authentic." *Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

Insurance had paid $177,000 in insurance proceeds to Anchor." (*Id.* ¶ 20.) Such representation was false, but Entrepraneur relied on the representation and did not learn of the falsity of the representation until "late 2021." (*Id.* ¶¶ 21–22.) Lloyd's did not make a payment to Anchor because it believed "it had no reason to pay Anchor as a result of the fire because of the foreclosure." (*Id.* ¶ 23.) Lloyd's never informed Entrepraneur of that position. (*Id.* ¶ 36.) After Entrepraneur learned that Caldwell's representation was incorrect, Entrepraneur informed Lloyd's that it was entitled to payment as a result of the loss generated by the July 28, 2018 fire. (*Id.* ¶ 37.) In response, Lloyd's repeatedly questioned the basis for Entrepraneur's right to the payment and stated that ownership of the Residence at the time off the fire was not a "full response to the question." (*Id.* ¶ 38.) On July 26, 2022, Lloyd's, for the first time, indicated a suspicion that Entrepraneur was the cause of the July 28, 2018 fire. (*Id.* ¶ 41.)

### III. STANDARD OF REVIEW

"The Federal Magistrates Act requires a district court to 'make a de novo determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made.'" *Diamond v. Colonial Life & Acc. Ins. Co.,* 416 F.3d 310, 315 (4th Cir. 2005) (quoting 28 U.S.C. § 636(b)(1)) (alteration in original). "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Id.* (quoting Fed. R. Civ. P. 72 Advisory Committee Notes).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). Dismissals under Rule 12(b)(6) are generally disfavored by the courts because of their res judicata

effect. *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991). Federal Rule of Civil Procedure 8 only requires that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of Federal Rule 8(a)(2). *Id.* (citations omitted). "[A] motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's well-pleaded allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Id.* (citations omitted); *see also Martin*, 980 F.2d at 952.

However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Labels and conclusions," a "formulaic recitation of the elements," and "naked assertions" without factual enhancement are insufficient. *Id.*

## IV. DISCUSSION

### A. Clear Error Review of Unobjected-to Portions of the R&R

No objections were received from the parties regarding the Magistrate Judge's recommendation that the Court grant Defendant's Motion to Dismiss as to Counts Two and Three and deny Plaintiff's Motion to Amend as to those same counts. After reviewing for clear error and finding none, the Court will adopt these recommendations and all other portions of the R&R for which no specific objections was filed.

### B. De Novo Review of Objected-to Portions of the R&R

Defendant filed the following ten objections to the R&R (quoted below in full), arguing Magistrate Judge Speight erred—

1. In accepting as true Plaintiff's allegation that "Christopher Caldwell, the President of Cardinal Associates, Inc., [was] an insurance agent for" the Defendant when he allegedly represented to the Plaintiff that the Defendant had paid $177,000 in insurance proceeds to Anchor, when forming her conclusions, findings and recommendations;

2. In finding "that the proposed Second Amended Complaint sets forth sufficient factual allegations to allege equitable estoppel";

3. In recommending that Plaintiff "be allowed to pursue Count One as presented in the proposed Second Amended Complaint";

4. In finding that Counts Four and Five should not be dismissed with prejudice, and recommending that Plaintiff should be granted leave to amend Counts Four and Five;

5. In finding that the Amended Complaint sufficiently describes the contents of the alleged fraud;

6. In finding that the Amended Complaint adequately pled motive/intent of the alleged fraud;

7. In finding that the proposed Second Amended Complaint adequately pled timing of the alleged fraud;

8. In concluding that Plaintiff "presumably could correct" the deficiencies with its fraud causes of action by filing an amended pleading;

>  9. In recommending that Plaintiff "be granted leave to amend its pleading" to include "allegations about the place of the alleged fraud"; and
>
>  10. In not finding that Plaintiff's "reliance [on Mr. Caldwell's misrepresentation was] unreasonable as a matter of law."

(Obj. 1–2, ECF No. 32) (internal citations omitted) (quoting R&R). For clarity's sake, the Court finds that the objections can be grouped into three larger categories. The first objection deals with the question of agency; the second and third objections deal with the Magistrate Judge's recommendations on Count One: Breach of Contract; and objections four through ten deal with the Magistrate Judge's recommendations on Counts Four and Five: Actual and Constructive Fraud. The Court will address each category of objections in turn.

1. Agency

According to Virginia law, a "licensed agent shall be held to be the agent of the insurer that issued the insurance sold, solicited, or negotiated by such agent in any controversy between the insured or his beneficiary and the insurer." Va. Code Ann. § 38.2-1801 (2023). "Although the statute does not necessarily mandate that a licensed agent is a general agent of the insurer, the statute specifically provides that a licensed agent selling, soliciting or negotiating insurance is deemed an agent of the insurer." *Tiger Fibers, LLC v. Aspen Specialty Ins. Co.*, 594 F. Supp. 2d 630, 645 (E.D. Va. 2009).

Defendant objects to the Magistrate's Judge's finding that Christopher Caldwell, the President of Cardinal Associates, Inc., was "Lloyd's agent" at the time he made the alleged misrepresentation to Plaintiff. (Obj. 3–4 (quoting R&R 3).) Defendant argues that the Magistrate Judge erred in stating that Caldwell was "Lloyd's agent" because such a "statement forms a legal conclusion not drawn from facts pled within the Amended Complaint or proposed Second Amended Complaint." (*Id.* at 4.) Defendant relies on *Tiger Fibers* for its argument and claims

7

that if an individual is not actively "selling, soliciting, or negotiating insurance," then he is not deemed an agent of the insurance company. (*Id.*) Defendant further notes that Plaintiff has not alleged to whom Caldwell made the statement and how that person's knowledge can be imputed to the corporate Plaintiff. (*Id.* 4–5.)

The Court disagrees with Defendant's interpretation of *Tiger Eyes* and finds that the language in *Tiger Eyes* is inclusive, not exclusive. By stating that "the statute specifically provides that a licensed agent selling, soliciting or negotiating insurance is deemed an agent of the insurer," the court was stating that such an agent who sells, solicits, or negotiates insurance is affirmatively an agent of the insurer, not that such requirements must be satisfied for an agent to be an agent of the insurer. *Tiger Eyes*, 594 F. Supp. 2d. at 645. In other words, such language represents criteria that are sufficient to be considered an agent, not criteria that are necessary to be considered an agent. In fact, the statute uses the words "sold, solicited, or negotiated," which indicates that the agent does not have to be actively selling, soliciting, or negotiating the insurance. Va. Code Ann. § 38.2-1801 (2023).

Even if the Court were to agree with Defendant regarding the particular phrasing of Caldwell's status, the Court still finds that Plaintiff has successfully alleged that Caldwell made the misrepresentation when he was the President of Cardinal Associates, which was an agent of Lloyd's. (Am. Compl. ¶ 20; *see also* Proposed Second Am. Compl. ¶ 20). The Court notes that Defendant did not dispute this phrasing of the agency language in its Motion to Dismiss pleadings (*see* Mem. Supp. Mot. Dismiss 15, ECF No. 9-1; Reply 2, ECF No. 16), and does not object to such phrasing now.

At this stage in the litigation, further factual development is required before the Court can conclude whether or not Caldwell acted as Lloyd's agent as a matter of fact. But, for the purposes of the pending Motion to Dismiss, the Court finds that Plaintiff has plausibly alleged that, "[a]cting

8

as agent for Lloyd's Insurance, Cardinal Associates, through Caldwell, represented to Entrepraneur that Lloyd's Insurance had paid $177,000 in insurance proceeds to Anchor." (Am. Compl. ¶ 20; *see also* Proposed Second Am. Compl. ¶ 20.)

### 2. Count One: Breach of Contract

The Insurance Policy bars any claims from being brought after July 28, 2020, and Plaintiff filed its present claim on July 28, 2022, missing the two-year deadline. (*See* Insurance Policy 45, ECF No. 4-2.) However, "[t]he doctrine of equitable estoppel bars a statute of limitations defense by a defendant whom by his own conduct, lulls another into a false sense of security." *York v. Nationwide Gen. Ins. Co.*, No. 3:19-CV-509, 2019 U.S. Dist. LEXIS 208489, at *3 (E.D. Va. Dec. 3, 2019). In alleging equitable estoppel in response to a Rule 12(b)(6) motion to dismiss, Plaintiff "has the burden of pleading facts that would support a finding that equitable estoppel applies." *Id.* (quoting *Snapp v. Lincoln Fin. Secs. Corp.*, No. 5:17-CV-00059, 2018 U.S. Dist. LEXIS 34492, at *14 (W.D. Va. Mar. 2, 2018)).

Here, Defendant objects to the Magistrate Judge's finding that the proposed Second Amended Complaint sets forth sufficient factual allegations to allege equitable estoppel against Defendant's claims for dismissal and objects to the recommendation that Plaintiff be allowed to pursue Count One as presented in the proposed Second Amended Complaint. (Obj. 2, 5.) More specifically, Defendant argues that Caldwell's statement would "not lull anyone into a false sense of security or cause anyone to put off filing a lawsuit against the payor" because learning that the money that was due to you was sent to someone else would cause one to look into the "veracity of this information." (*Id.* 5.)

The Court finds Plaintiff sufficiently meets its burden in alleging equitable estoppel in the Proposed Second Amended Complaint because Plaintiff alleges that it would have filed suit if not for Caldwell's intentional misrepresentation. (Proposed Second Am. Compl. ¶ 22, ECF No. 13-

1.) Taking all of the facts Plaintiff pleaded as true and interpreting them in the light most favorable to Plaintiff, the Court finds that Plaintiff has successfully met its burden of alleging that Caldwell's actions, "lull[ed] [Plaintiff] into a false sense of security." *York*, 2018 U.S. Dist. LEXIS 34492, at *14. Specifically, in the Proposed Second Amended Complaint, Plaintiff states that "Entrepraneur did not file such suit within such two years because Entrepraneur reasonably believed that Lloyd's Insurance had already paid the full policy limit of the insurance policy to Anchor as a result of the July 28, 2018 fire." (Proposed Second Am. Compl. ¶ 22.) On the basis of this allegation, the Court finds that Defendant should be barred from arguing untimeliness as a ground for dismissal and Plaintiff should be permitted to pursue Count One as alleged in the Proposed Second Amended Complaint.

### 3. Counts Four and Five: Actual and Constructive Fraud

Rule 9 of the Federal Rules of Civil Procedure mandates a heightened pleading standard for claims of fraud, noting that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To plead fraud under Virginia law, a plaintiff must allege "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Walker v. Hill*, No. 21-1803, 2023 U.S. App. LEXIS 423, at *6 (4th Cir. Jan. 9, 2023). Importantly, the "reliance upon the representation [must be] reasonable and justified." *Id.* at *6–7.

Under Federal Rule of Civil Procedure 15, a party may amend its pleading with either the consent of the opposing party or the leave of court. Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.*

The remaining set of Defendant's objections can be broken into three subcategories. Objections five, six, and seven all pertain to the Magistrate Judge's determination surrounding the sufficiency and quality of Plaintiff's allegations as they pertain to the claims of active and

10

constructive fraud. Objections four, eight, and nine pertain to the Magistrate Judge's determination that leave should be granted to amend the Proposed Second Amended Complaint to cure its deficiencies. The tenth objection pertains to the Magistrate Judge's finding that Plaintiff's reliance on the Caldwell misstatement was not unreasonable and unjustified as a matter of law, as it pertains to the claims of active and constructive fraud. (Obj. 8 (citing R&R 19).)

### a. Sufficiency of Pleadings

When alleging fraud, Plaintiff must plead with particularity "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *See* Fed. R. Civ. P. 9(b); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). These requirements are not unyielding, and generally serve to ensure that the defendants have sufficient information to formulate a defense. *See Harrison*, 176 F.3d at 784; *Scott v. GMAC Mortg., LLC*, Civ. No. 3:10cv00024, 2010 WL 3340518, at *8 (W.D. Va. Aug. 25, 2010).

First, Defendant argues that the Magistrate Judge erred in finding that Plaintiff sufficiently pled the "*contents*" of the false representation because the statement is a generalization and does not describe exactly what was said. (Obj. 6.) Next, Defendant argues that the Magistrate Judge erred in finding that Plaintiff sufficiently pleaded what the individual "*obtained thereby*," because Plaintiff never alleged such a motive. (*Id.*) Additionally, Defendant argues that the Magistrate Judge erred in finding that Plaintiff sufficiently pled "*timing*" because a period of time covering two months is not adequate to meet the heightened pleading standard. (*Id.* at 6–7.)

The Court finds that the Amended Complaint sufficiently described the contents of the misrepresentation because it specifically states that "Cardinal Associates, through Caldwell, represented to Entrepraneur that Lloyd's Insurance had paid $177,000 in insurance proceeds to

11

Anchor." (Am. Compl. ¶ 20.) Additionally, the Court finds that the Amended Complaint sufficiently pleads the motive or intent behind the misrepresentation because the Amended Complaint stated that Plaintiff's reliance on the misrepresentation caused Plaintiff not to file suit against Lloyd's within the two-year period. (*See id.* ¶ 55.) When drawing all reasonable inferences in favor of the Plaintiff, it is apparent Plaintiff alleges that what Lloyd's obtained was Plaintiff missing the deadline to file the suit. Furthermore, the Court finds that the proposed Second Amended Complaint adequately pleads the timing of the misrepresentation because it affirmatively states that the misrepresentation occurred "in June or July 2019," (Proposed Second Am. Compl. ¶ 20.), and such a specificity is adequate to meet the heightened pleading standard of Rule 9. Taken together, Plaintiff has thus sufficiently pleaded the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *See* Fed. R. Civ. P. 9(b); s*ee, e.g., Nahigian v. Juno Loudon, LLC,* 684 F. Supp. 2d 731, 735, 738–39 (E.D. Va. 2010) (holding that the plaintiff satisfied 9(b)'s particularity requirements, despite only pleading a general time period and location in which the misrepresentations occurred, and failing to specify which of defendant's representatives made the misrepresentation). Therefore, the Court finds that the Magistrate Judge's conclusions were not incorrect as to the aforementioned issues.

### b. Leave to Amend

Federal Rule of Civil Procedure 15 "gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). The Fourth Circuit has interpreted Rule 15 to provide that "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Id.* (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)).

Defendant alleges that the Magistrate Judge erred in concluding that even though the Proposed Second Amended Complaint contained no allegations about the "*place*" of the alleged fraud, Plaintiff "presumably could correct" the deficiencies by filing an amended pleading that contained "allegations about the place of the alleged fraud." (Obj. 7.) Specifically, Defendant argues that the Magistrate Judge did not consider the holding in *Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.*, 432 F. Supp. 2d 571 (E.D. Va. 2006), regarding futile amendments. (*Id.*) For those reasons, Defendant claims that the Magistrate Judge erred in finding that Counts Four and Five should not be dismissed with prejudice and erred in recommending that Plaintiff should be granted leave to further amend Counts Four and Five before filing a Second Amended Complaint. (*Id.* at 1.)

In *Iron Workers*, the court refused to grant leave to amend the Amended Complaint and dismissed the case with prejudice because "Plaintiff has already had two full opportunities to state a claim and have (sic) failed to do so." 432 F. Supp. 2d at 595. The court cited *Travelers Casualty & Surety Co. v. Danai*, No. Civ. A. 05-356, 2005 WL 2045398 (E.D. Va. Aug. 22, 2005) for the notion that "[i]n the Eastern District of Virginia, an amendment may be considered futile where Plaintiffs have previously had two full opportunities to plead their claim." *Id.* *Danai* involved a Second Amended Complaint in which the plaintiff alleged that certain defendants were on constructive notice of plaintiff's lien, a necessary allegation for the plaintiff to plead its claim. 2005 WL 2045398, at *1–2. The court concluded that for those defendants to be on constructive notice of the lien, the judgment had to be docketed against those defendants, which plaintiff conceded that it was not. *Id.* at *2. Thus, the court granted the motion to dismiss on the grounds that the defendants were "bona fide purchasers for value without notice." *Id.* The court also denied the request for leave to amend as futile because "Plaintiffs (sic) have had two full opportunities to plead their claim." *Id.* at *3.

However, the situation presented here is markedly different than the situation in *Danai*, where the plaintiff had conceded that the judgment was not docketed against the defendants at issue and thus there was no way of alleging constructive notice under Virginia law. *See id.* at *2. Here, Plaintiff has made no such absence-of-necessary-fact concession, and it is not impossible for Plaintiff to include additional facts regarding the place where the alleged misstatement took place. As such, the Court finds that an amendment would not be futile. Even though some other district courts in the Eastern District have denied leave to amend when a plaintiff has already been given two opportunities to plead its case, those decisions are not binding on this Court. Given the Fourth Circuit's preference of resolving cases on the merits instead of technicalities, and further given Defendant's failure to highlight any potential prejudice in granting Plaintiff leave to amend, the Court will permit Plaintiff to attempt to correct the presently deficient Proposed Second Amended Complaint, to include factual allegations regarding the place of the alleged fraud. *See Laber*, 438 F.3d at 427 ("Delay alone, however, is an insufficient reason to deny the plaintiff's motion to amend."); *see also Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980) ("Conversely, absence of prejudice, though not alone determinative, will normally warrant granting leave to amend."). However, should Plaintiff again fail to properly allege facts concerning the place of the alleged misstatement, the Court will not be inclined to grant further leave to amend.

### c. Reasonableness of Reliance

For Plaintiff's Virginia-law-based fraud claims to survive the motion to dismiss stage, assuming the with-particularity pleading standard has been met, Plaintiff must plausibly allege that "his reliance upon the representation was reasonable and justified." *Walker*, 2023 U.S. App. LEXIS 423, at *6–7. "The touchstone of reasonableness is prudent investigation." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 629 (4th Cir. 1999). "When the plaintiff has notice of

facts which would lead an ordinarily prudent person to investigate, and a reasonable inquiry would have revealed the misrepresentation, the plaintiff who fails to so investigate can't claim to have reasonably relied on the misrepresentation." *Walker*, 2023 U.S. App. LEXIS 423, at * 7. "But when one party 'throws the other off guard or diverts him from making the reasonable inquiries which usually would be made, . . . Virginia law will forgive an incomplete investigation.'" *Id.* (quoting *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 828 (4th Cir. 1999)). "Typically, reasonable reliance is reserved for the trier of fact to determine." *Fessler v. IBM*, 959 F.3d 146, 154 (4th Cir. 2020).

Defendant argues that the Magistrate Judge erred in finding that Plaintiff's reliance on Caldwell's misstatement—that Lloyd's had paid $177,000 in insurance proceeds to Anchor—was reasonable. Specifically, Defendant posits that the reliance was unreasonable and unjustified "because of the foreclosure sale and because of [Plaintiff's] ongoing lawsuit with Anchor." (Obj. 8.) Defendant contends that due to Plaintiff's knowledge of the foreclosure sale "on or before September 25, 2018" and Plaintiff's pending litigation against Anchor "from September 2018 to September 2019," Plaintiff's allegation that it did not discover that Defendant did not pay Anchor until "late 2021" is "not plausible." (*Id.* 9.) Defendant contends that an "ordinary prudent person" would have asked Anchor about the payment during the litigation and Plaintiff's failure to do so is not justified and reasonable. (*Id.*)

The Court believes that there is not yet enough factual support in the record to conclude as a matter of law whether an ordinarily prudent person would be on notice of the need to investigate the alleged misrepresentation. The uncertainty regarding the date of Plaintiff's discovery of the foreclosure sale and the presently unknown nature and circumstances surrounding Plaintiff's litigation with Anchor "create a fact issue as to whether an ordinarily prudent person would be on notice of the need to investigate" the misrepresentation and thus make this a question "reserved

for the trier of fact to determine." *Walker*, 2023 U.S. App. LEXIS 423, at *9. For present purposes, however, taking the facts as pleaded in the light most favorable to Plaintiff, the Court finds that Plaintiff has articulated a basis for reasonable reliance sufficient to survive Defendant's Motion to Dismiss.

Based on the foregoing, the Court will conditionally grant Plaintiff's Motion for Leave to File Second Amended Complaint as to Counts Four and Five, subject to correction of the particularity deficiencies noted above.

## V. CONCLUSION

For the reasons set forth in this Memorandum Opinion, the Court will overrule the Defendant's Objection, adopt the Magistrate Judge's Report and Recommendation, grant the Defendant's Motion to Dismiss Plaintiff's Amended Complaint, and grant in part and deny in part Plaintiff's Motion Seeking Leave to File Second Amended Complaint.

An appropriate Order shall issue.

/s/
Roderick C. Young
United States District Judge

Richmond, Virginia
Date: August 31, 2023